IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYNNE GARROW | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 15-1468 |
| WELLS FARGO BANK, N.A. | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                              **OCTOBER  7 , 2016**

Presently before the Court is the Motion of Defendant Wells Fargo Bank, N.A. for Summary Judgment. (ECF No. 24.) For the following reasons, Defendant's Motion will be granted.

**I.      BACKGROUND**

This action is a dispute over the circumstances under which Plaintiff Lynne Garrow's employment with Wells Fargo Bank, N.A. ("Wells Fargo") was terminated. Plaintiff asserts claims of discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951, *et seq.*

**A.      Employment Termination**

Plaintiff was employed as a bank teller at Defendant Wells Fargo's bank on Red Lion Road in Philadelphia. (Pl. Dep. 12-13, Def.'s Summ. J. Br. Ex. B, ECF No. 24.) One of Plaintiff's duties as a teller was to assist customers by referring them to bankers, who would in turn inform the customers about services and products. (*Id.* at 99-100.) Tellers received financial bonuses for products and services that were sold to customers upon a referral. (*Id.*)

Defendant's Team Member Handbook provides that a valid referral would typically occur when a teller spoke directly to a customer about a referral and gained that customer's agreement for that product or referral.  (Pl.'s Resp. Ex. A-4 WF 1917, ECF No. 27; Pl. Dep. 101.)  Defendant's Sales Quality Manual provides guidelines as to what constitutes an invalid referral.  An invalid referral occurs when a teller does not have any contact with a customer, or when a customer walks into a bank branch with the intent to purchase a product or service.  (Pl.'s Resp. Ex. A-6 WF 902.)  It is Defendant's policy to terminate any tellers who have three or more confirmed improper referrals.  (McKinney Decl. ¶ 7, Def.'s Summ J. Br. Ex. D.)

On December 5, 2013, Defendant received an anonymous report claiming violations of its referral program at the Red Lion Road bank.  (McKinney Dep. Ex. 3 WF 793, Def.'s Summ. J. Br. Ex. D.)  The report alleged that tellers were taking credit for invalid referrals.  (*Id.*)  Upon receiving the report, Erica Martel, a Quality Assurance Analyst with Defendant's Sales Quality Department, conducted a polling of customers who visited the branch.  (McKinney Dep. 8-9; Martel Decl. ¶ 2, Def.'s Summ. J. Br. Ex. F.)  Martel was based in California and had never met any of the tellers at the Red Lion Road bank, including Plaintiff.  Moreover, she was not provided with any personal information about tellers, including their ages and disability status.  (Martel Decl. ¶¶ 1, 3-5.)

Martel called at random fifteen customers for which Plaintiff submitted teller referrals.  (Martel Notes, McKinney Decl. Ex. 1, Def.'s Summ. J. Br. Ex. D.)  Four customers that Martel reached reported that they either did not speak with Plaintiff, or that they entered the bank with the express intention of opening an account.  (*Id.* at WF 833-35.)  Martel also conducted polling of the customers of the other Red Lion Road bank tellers:  Dorothy Lightly, Rita Kaplan, Bhukima Bhatt, and Deana Norris.  (*Id.* at WF 793-820, 860-83.)  After calling more than fifteen

customers in the polling for each teller, Martel determined that Lightly, Bhatt, and Norris had one confirmed invalid referral each, while Kaplan had three. (*Id.*)

Once the polling was completed, Julia McKinney, an Investigator from Defendant's Internal Investigations Department, was randomly assigned to the case. (McKinney Dep. 34-35; McKinney Decl. ¶¶ 1, 3, Def.'s Summ. J. Br. Ex. E.) McKinney was not aware of Plaintiff's age or that she had any medical condition. (McKinney Decl. ¶¶ 11-12.) Upon studying the polling results, McKinney scheduled interviews with each of the tellers working at the Red Lion Road bank. (*Id.* at ¶ 8.) On March 4, 2014, McKinney and District Manager Maria Enriquez interviewed the bankers and the tellers at the branch. (*See* McKinney Dep. Ex. 3.) Before meeting with Plaintiff, McKinney was approached by Plaintiff's supervisor, Eliana Reyes, who informed McKinney of a fifth invalid referral submitted by Plaintiff. (*Id.* at WF 775-76.) During her interview, Plaintiff was asked whether she had spoken to the polled customers for whom she took referral credit. (Pl. Dep. 25.) Plaintiff stated that she could not recall the customers,[1] and asked if she could retrieve a clipboard that contained her personal notes. (*Id.* at 25, 35.) Plaintiff was told that this was not "necessary." (*Id.* at 25.) Despite sensing that she was being "targeted," Plaintiff did not attempt to cross-check the names of the alleged invalid referrals against the names on her clipboard after the interview was completed. (*Id.* at 25, 34.)

---

[1] Defendant disputes these facts. There is substantial evidence demonstrating that Plaintiff did admit to entering invalid referrals during her meeting with Enriquez and McKinney. (*See, e.g.*, McKinney Dep. 42 & Ex. 3 WF 775-76; Enriquez Dep. 20, Def.'s Summ. J. Br. Ex. G.) These invalid referrals are substantiated by the customer polling. During her deposition, Plaintiff also admitted that she submitted a referral for an individual who was already speaking with a banker. (Pl. Dep. 123-25.) This is a violation of Wells Fargo's written teller referral policies. (*See* Pl.'s Resp. Ex. A-6 WF 902.) Nevertheless, we must view any plausible factual disputes in the light most favorable to Plaintiff. *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 794 (3d Cir. 2007).

Following the investigation, McKinney concluded that Lightly, Norris, and Bhatt each had one invalid referral, for which they were placed on performance improvement plans. (McKinney Dep. Ex. 3 WF 779.)  Kaplan, who had three invalid referrals, had retired by the time the investigation was completed.  She was nevertheless noted as ineligible for rehire.  (*Id.* at WF 778.)  Defendant's Human Resources Department determined that Plaintiff had five substantiated instances of processing invalid teller referrals.  (McKinney Decl. ¶ 15; Enriquez Dep. 54.)  As a result, Plaintiff's employment was terminated on April 2, 2014.  (Pl. Dep. Ex. 10.)

      **B.**     **Procedural History**

On March 23, 2015, Plaintiff filed the original Complaint against Defendant.  (ECF No. 1.)  On March 31, 2015, Plaintiff filed a First Amended Complaint.  (Am. Compl., ECF No. 3.)  The First Amended Complaint alleged violations of the ADEA, the ADA, and the PHRA.  Defendant filed an Answer on May 13, 2015, denying that it had discriminated against Plaintiff.  (ECF No. 8.)  On January 22 and February 3, 2016, a settlement conference was held.  The parties were unable to resolve the matter.  (ECF Nos. 22, 23.)  On March 17, 2016, Defendant filed the instant Motion for Summary Judgment.  On April 18, 2016, Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgement.  (ECF No. 27.)  On April 25, 2016, Defendant filed a Reply Brief in Further Support of the Motion of Defendant Wells Fargo Bank, N.A. for Summary Judgment.  (ECF No. 32.)

**II.**     **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party.  *Kaucher v. Cty. of*

*Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "[A] factual dispute is material only if it might affect the outcome of the suit under governing law." *Id*.  The court must view the evidence in the light most favorable to the non-moving party.  *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).  However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment.  *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)).

Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).  If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *see also Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

### III.   DISCUSSION

The First Amended Complaint asserts claims for age discrimination and retaliation (Count I), disability discrimination and retaliation (Count II), and violations of the PHRA (Count III).  In her Response in Opposition to Defendant's Motion for Summary Judgment, Plaintiff

withdraws her claims for retaliation under the ADEA, the ADA, and the PHRA. Defendant denies the remaining claims and moves for summary judgment on all Counts in the First Amended Complaint.

### A. Age Discrimination (Counts I and III)

Defendant requests that judgment be entered in its favor and against Plaintiff on Plaintiff's age discrimination claims under the ADEA and PHRA in Counts I and III of the First Amended Complaint.

The ADEA states that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The PHRA contains an analogous provision.[2] Defendant argues that Plaintiff has not offered sufficient evidence to support her claims under the ADEA and PHRA. Plaintiff contends that there is enough evidence in the record to raise a triable issue of fact.

As the parties have noted in their respective briefs, claims of age discrimination proceed under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S.

---

[2] In pertinent part, the PHRA states:

> It shall be an unlawful discriminatory practice . . . [f]or any employer because of the . . . age . . . of any individual . . . to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual . . . or to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual . . . is the best able and most competent to perform the services required.

43 Pa. Cons. Stat. § 955(a).

792 (1973).³ *Snik v. Verizon Wireless*, 160 F. App'x 191, 193 (3d Cir. 2005); *see also Fakete v. Aetna, Inc.*, 308 F.3d 335, 337-38 (3d Cir. 2002) ("An ADEA plaintiff can meet [her] burden by (1) presenting direct evidence of discrimination . . . , or (2) presenting indirect evidence of discrimination that satisfies the familiar three-step framework of *McDonnell Douglas* . . . ."). Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff meets this initial burden, the defendant can rebut the prima facie case by providing legitimate, nondiscriminatory reasons for its actions. *Id.* If the defendant meets its burden of production, the plaintiff must then demonstrate by a preponderance of the evidence that the defendant's proffered legitimate reasons are a pretext for discrimination. *Id.* at 804.

    *1.*  *Plaintiff's Prima Facie Case*

  To establish a prima facie case of discrimination in ADEA cases, a plaintiff must show that: (i) the plaintiff was a member of the protected class, i.e., was forty years of age or older; (ii) the plaintiff was discharged; (iii) the plaintiff was qualified for the job; and (iv) the plaintiff was replaced by a sufficiently younger person, or a younger, similarly situated employee was treated more favorably, creating a reasonable inference of age discrimination. *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (citations omitted); *see also Steward v. Sears Roebuck & Co.*, 231 F. App'x 201, 210 n.5 (3d Cir. 2007) (reasoning that evidence demonstrating more favorable treatment of "significantly younger," "similarly situated employees" could be used to satisfy the fourth prong). "[T]he prima facie case under the *McDonnell Douglas-Burdine* pretext framework is not intended to be onerous." *Sempier v.*

---

³ "[T]he PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) (citing *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996)).

*Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  Defendant contests the third and fourth prongs of Plaintiff's prima facie case.  (Def.'s Summ. J. Br. 26-28.)

In evaluating the third prong, courts "determine a plaintiff's qualifications for purposes of proving a prima facie case by [using] an objective standard."  *Sempier*, 45 F.3d at 729 (citations omitted).  A failure to introduce evidence exhibiting subjective qualifications, such as leadership or managerial skill, should not be used to prevent a non-movant from moving beyond the initial stage of establishing a prima facie case.  *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir. 1990).

Here, Plaintiff contends that she was qualified for her position because she was a longtime employee of Defendant without any significant negative employment history.  (Pl.'s Resp. 10.)  Defendant argues that because Plaintiff has admitted to acts of deception and dishonesty, she is no longer bondable and, therefore, no longer qualified for her former position.  (Def.'s Summ. J. Br. 26.)  Although Defendant may be correct that Plaintiff ultimately will be unqualified because she is not bondable, such a determination is premature at this juncture.  Significantly, Defendant has failed to introduce any evidence to show that Plaintiff lacked the education, experience, or skills that commonly define objective factors of job qualification.  *See Blackwell-Murray v. PNC Bank*, 963 F. Supp. 2d 448, 463 (E.D. Pa. 2013) (finding that although the plaintiff bank employee violated defendant's polices because of dishonest behavior, the plaintiff still met the third prong of his prima facie case due to the defendant's failure to demonstrate plaintiff was objectively unqualified).  Moreover, Plaintiff has been a satisfactory employee of Defendant for many years.  Plaintiff has satisfied the third prong in establishing her prima facie case.

To satisfy the fourth prong of the prima facie case, a plaintiff must demonstrate that she was terminated under "circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999) (citation omitted).  Alternatively, a plaintiff may establish an inference of discrimination by pointing to "similarly situated individuals outside the plaintiff's class [who] were treated more favorably [than she]." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 273-74 (3d Cir. 2010).  It is the plaintiff's burden to identify potential comparators and to put forth evidence that they are similarly situated.  *See Warfield v. SEPTA*, 460 F. App'x 127, 130 (3d Cir. 2012).  While "similarly situated does not mean identically situated, the plaintiff [and the comparators] must nevertheless be similar in all relevant respects."  *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222-23 (3d Cir. 2009) (citation and internal quotation marks omitted).  Factors that demonstrate similarity include whether the comparators had the same supervisor, were subject to the same standards, and "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."  *Id.* at 223.

In an attempt to satisfy the fourth prong of her prima facie case, Plaintiff asserts that "upon information and belief," she was replaced by two people under the age of thirty.  (Am. Compl. ¶ 37.)  However, the only evidence Plaintiff offers to support this assertion is her own deposition testimony in which she states that she went into the Red Lion Road bank after she was terminated and saw a young man who she "guess[ed]" was in his early twenties sitting at her former teller window.  (Pl. Dep. 172.)  Plaintiff further speculates that because this man was sitting in her former spot, he must have been her replacement.  (*Id.*)  Plaintiff offers no other evidence from which to infer that this employee was indeed her replacement, or even a

9

permanent teller at the bank branch.[4] Plaintiff's "guess" that this young man was her replacement does not create a colorable issue of fact for trial and is insufficient to survive a motion for summary judgment. *See Frost v. PetSmart, Inc.*, No. 05-6759, 2007 WL 602990, at *5 (E.D. Pa. Feb. 26, 2007) (holding that a plaintiff's "own unsubstantiated, subjective beliefs or suspicions alone would not suffice to persuade a rational trier of fact that age was a factor in the termination decision"); *see also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 799 (3d Cir. 2003) (maintaining that a prima facie claim of age discrimination is not established by merely pointing to the hiring of younger employees); *Geiger v. AT & T Corp.*, 962 F. Supp. 637, 647 (E.D. Pa. 1997) (granting the defendant's motion for summary judgment where the plaintiff failed to produce any evidence that he was actually replaced by a younger worker).[5]

Plaintiff argues in the alternative that younger tellers who engaged in similar misconduct were placed on a performance improvement plan in lieu of termination. (Pl.'s Resp. 11.) She contends that such differential treatment creates a reasonable inference of age discrimination.

---

[4] Plaintiff asserts that many banks, including Defendant's, employ "floating tellers" who fill in at different branches on an as-needed basis. (Pl. Dep. 14.)

[5] Plaintiff asks us to defer our decision until the parties are able to resolve the actual ages of her replacement. (Pl.'s Resp. 7 n.2.) We decline to accept Plaintiff's invitation to delay this matter further. Discovery would have been the appropriate time for such resolution. Plaintiff took five depositions in addition to written discovery. (ECF No. 17.) The discovery deadlines were extended by two months to accommodate Plaintiff. Plaintiff was afforded ample time to gather evidence to support her claim. *See, e.g.*, *Lunderstadt v. Colafella*, 885 F.2d 66, 71-72 (3d Cir. 1989) (concluding that the district court had not abused its discretion in determining that "more discovery by plaintiffs was unwarranted primarily because they already had a substantial amount of time to conduct such discovery and had failed to do so"). Furthermore, Federal Rule of Civil Procedure 56(f) "requires a party seeking additional discovery to submit an affidavit specifying what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *ITT Indus., Inc. v. Wastecorp. Inc.*, 87 F. App'x 287, 298 n.13 (3d Cir. 2004) (internal quotation marks and citation omitted). "[F]ailure to comply with Rule 56(f) is fatal to a claim of insufficient discovery . . . ." *Id.* Plaintiff has not filed the requisite Rule 56(f) affidavit.

(*Id.*)  Of the tellers placed on performance improvement plans, each is believed to be under the age of forty.  (Pl. Dep. 31-32.)  Assuming this to be true, Plaintiff has still not demonstrated how they were similarly situated.  Although the tellers worked under the same supervisor and were required to comply with the same standards, the extent of their misconduct was not similar.

The evidence shows that three tellers had only one confirmed incident of filing an invalid referral.  (McKinney Dep. Ex. 3 WF 779.)  Because it was Defendant's policy to terminate employees who had three or more invalid referrals (McKinney Decl. ¶ 7), Plaintiff—who had five substantiated invalid referrals—was terminated.  The other tellers—who had one invalid referral each—remained employed and were placed on performance improvement plans.  (McKinney Dep. Ex. 3 WF 779; Enriquez Dep. 54.)  "[S]imilar conduct is not sufficient if the plaintiff exhibited a pattern of behavior while the comparators exhibited only isolated instances." *George v. Lehigh Valley Health Network*, No. 12-2239, 2014 WL 1464327, at *4 (E.D. Pa. Apr. 15, 2014); *see also Young v. City of Phila. Police Dep't*, 94 F. Supp. 3d 683, 696 (E.D. Pa. 2015) (finding that the plaintiff failed to identify sufficient comparators where the plaintiff had a more extensive disciplinary record than the other employees), *aff'd*, No. 15-2115, 2016 WL 3101283 (3d Cir. June 3, 2016).  Plaintiff has not identified a genuine issue of material fact as to the similarity of her misconduct with that of her comparators.  Therefore, she has not established a prima facie case of age discrimination.

    2.    *Wells Fargo's Reason for its Actions*[6]

Under the second step of the *McDonnell Douglas* framework, a defendant can rebut the plaintiff's prima facie case if the defendant "offers evidence that is sufficient, if believed, to

---

[6] We need not continue the analysis.  Nevertheless, we will address the three-step framework of *McDonnell Douglas* to establish the firm basis on which this decision rests.

11

support a finding that it had a legitimate, nondiscriminatory reason for the discharge." *Keller*, 130 F.3d at 1108 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993)). Here, Defendant states that Plaintiff was terminated for violating Wells Fargo referral policies. (Def.'s Summ. J. Br. 35.) Defendant argues that because the investigation uncovered five instances of Plaintiff's violating company policy, it had no choice but to terminate her employment. (*Id.*)

Defendant received an anonymous tip about violations of the teller referral program at Defendant's Red Lion Road bank. (McKinney Dep. Ex. 3.) Based upon this tip, Defendant's Sales Quality Department conducted random polling of customers who had been served by each of the five bank tellers that were employed at the bank. (McKinney Decl. Ex. 1.) Defendant spoke with four customers that Plaintiff had identified as referrals. (*Id.*) Only one of those customers had spoken to a teller on the dates in question. (Martel Notes.) The one customer that was "greeted" by a teller was not sold a product or service, as she simply opened an account with a banker, as was her intention. (*Id.*) Defendant's policy provided that a valid referral would occur only when a teller spoke directly to a customer about a referral for a service that the customer did not already intend to purchase or had not already talked to a banker about. (*Id.* at Ex. 3 WF 902, 1917, Pl.'s Resp. Ex. A.) The polling results conclusively demonstrate that Plaintiff had four confirmed improper referral credits. As to the fifth improper referral, Plaintiff admitted in her deposition testimony that she entered a referral for fraud protection services for a customer that she knew was already speaking to a banker about services related to fraudulent activity on his account. (Pl. Dep. 123-25.) Although the customer did not ultimately purchase the fraud protection services, attempting to take credit for such a referral is a clear violation of Defendant's policies.

Violating bank policy is undoubtedly a legitimate and nondiscriminatory reason for termination. *See Griffith v. PNC Bank*, No. 13-5407, 2015 WL 2400222, at *7 (D.N.J. May 20, 2015) (finding the defendant bank had a legitimate reason to terminate plaintiff when he violated defendant's code of ethics); *Blackwell-Murray v. PNC Bank*, 963 F. Supp. 2d 448, 466 (E.D. Pa. 2013) (finding the defendant bank had a legitimate reason to terminate plaintiff when he violated defendant's notary policy). Defendant had good cause to terminate Plaintiff's employment. In fact, under bank policy it had no choice.

### 3. Pretextual Termination

Finally, under the third step of the *McDonnell Douglas* framework, a plaintiff may avoid summary judgment if she produces some direct or circumstantial evidence from which a factfinder could reasonably: "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. The evidence "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for the asserted non-discriminatory reasons.'" *Id.* at 765 (citations omitted) (emphasis in original). However, "federal courts are not arbitral boards ruling on the strength of 'cause' for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination." *Keller*, 130 F.3d at 1109 (citation and internal quotation marks omitted).

As Plaintiff states in her brief, much of the evidence she relies upon to make out her prima facie case overlaps with her attempt to establish pretext.[7] Without repeating at length our earlier discussion, Plaintiff has failed not only to sufficiently identify her replacements, she has also failed to establish that other tellers exhibited sufficiently similar behavior. The mere fact that Plaintiff's replacement may have been a young man does not support an inference of age discrimination. Likewise, just because younger co-workers with only one confirmed referral infraction were all placed on performance improvement plans in lieu of termination does not establish discriminatory animus. Repeated confirmed instances of prohibited conduct are reasonably more serious than one instance and could rationally lead to more severe consequences. *See Martin v. Health Care & Ret. Corp.*, 67 F. App'x 109, 113 (3d Cir. 2003) ("[A]n employer's decision that an incident is serious enough to warrant termination rather than a less severe punishment does not show that the reason for termination is pretextual."); *see also Oliver v. Clinical Practices of Univ. of Pa.*, 921 F. Supp. 2d 434, 451 (E.D. Pa. 2013) ("Plaintiff's subjective belief that termination was not warranted under the circumstances is insufficient to show pretext because the employer's belief governs.").

In an attempt to establish pretext, Plaintiff points to a statement made by McKinney during their meeting about the referrals. During the interview, McKinney stated, "I know you have been here almost 20 years and it would be a shame if you lost your job." (Pl. Aff. ¶ 4, Pl.'s Resp. Ex. B.) The suggestion that this statement demonstrates age discrimination without more is untenable. Plaintiff was a longtime employee of Defendant and continues to be a longtime

---

[7] The Third Circuit has stated that "the *prima facie* case and pretext inquiries often overlap . . . . [E]vidence supporting the *prima facie* case is often helpful in the pretext stage, and nothing about the *McDonnell Douglas* [] formula requires us to ration the evidence between one stage or the other." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008).

14

customer. (Pl. Dep. 187.) She was apparently valued and very well-liked by many bank customers and employees. In fact, Plaintiff was given a raise just before the referral investigation began. (Pl. Dep. 183.) On its face, McKinney's statement suggests that terminating Plaintiff's employment would be difficult for everyone involved. That McKinney's reference to Plaintiff's years of service vaguely alludes to her age, without more, does not establish pretext. Even if the statement was made in a threatening manner, this single comment does not suggest that Defendant was targeting Plaintiff because of her age. *See Fuentes*, 32 F.3d at 765 ("[T]he factual dispute at issue is whether discriminatory animus *motivated* the employer, not whether the employer is wise, shrewd, prudent, or competent." (emphasis added) (citations omitted)). There is nothing in this record from which to conclude that discriminatory age animus influenced Defendant's actions.

Plaintiff next argues that there is a genuine question as to whether she violated Defendant's referral policies because of ambiguities in its Team Member Handbook and Sales Quality Manual. (Pl.'s Resp. 16.) We reject this argument. Plaintiff testified that she understood what constituted a valid and invalid referral. (Pl. Dep. 24, 28-29, 100-02, 128-29.) Defendant's referral policy was not ambiguous, and it was enforced in a clear and equal manner. Plaintiff has failed to offer any evidence from which to conclude that Defendant's reason for Plaintiff's termination is anything but legitimate. Plaintiff has failed to demonstrate that Defendant's reason for termination was pretextual. *See, e.g.*, *James v. Sutliff Saturn, Inc.*, 468 F. App'x 118, 121 (3d Cir. 2012) ("[Plaintiff's] unsupported belief that he was fired for discriminatory reasons falls far short of establishing pretext." (internal quotation marks and citation omitted)); *Tolan v. Temple Health Sys. Transp. Team, Inc.*, No. 09-5492, 2013 WL 706049, at *18 (E.D. Pa. Feb. 26, 2013) ("In the end we are left only with [plaintiff's] subjective

belief that she was discriminated against, and that is not enough to survive summary judgment."), *aff'd*, 557 Fed. App'x. 132 (3d Cir. 2014).

### B. Disability Discrimination (Counts II and III)

In its Motion for Summary Judgment, Defendant seeks judgment in its favor on Plaintiff's claims of disability discrimination under the ADA and PHRA in Counts II and III of the Amended Complaint.

The ADA prohibits discrimination against a qualified individual with a disability because of the disability. 42 U.S.C. § 12112(a).[8] As with claims of age discrimination, claims of disability discrimination are analyzed under the framework of *McDonnell Douglas*. *Walton v. Mental Health Ass'n. of Se. Pa.*, 168 F.3d 661, 668 (3d Cir. 1999). In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show that: (1) she is a disabled person within the meaning of the ADA; (2) she is qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an adverse employment decision as a result of discrimination. *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). Defendant contests only the third prong of Plaintiff's prima facie case. (Def.'s Summ. J. Br. 29-32.)[9]

In order to meet the third prong, a plaintiff must show that her perceived disability was a "determinative factor" in the defendant's decision to terminate her employment. *Watson v. Se.*

---

[8] "The PHRA is basically the same as the ADA in relevant respects and Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts." *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (citation and internal quotation marks omitted).

[9] Plaintiff has a chronic medical condition, spasmodic torticollis, which causes her to experience a "slight tremor" that comes and goes "quickly." (Am. Compl. ¶ 22; Pl. Dep. 144, 188.) Her medical condition is uncontested. Other than setting up her work space differently than other tellers, Plaintiff never requested disability accommodations. (Pl. Dep. 162.)

*Pa. Transp. Auth.*, 207 F.3d 207, 214-15 (3d Cir. 2000). Here, Erica Martel, Defendant's employee based in California who conducted the polling, swore that she had no knowledge of Plaintiff's disability. (Martel Decl. ¶ 4, Def.'s Summ. J. Br. Ex. F.) Julia McKinney, the principle investigator in the matter, swore to the same. (McKinney Decl. ¶ 11.) Plaintiff cites to an affidavit in which she claimed that District Manager Maria Enriquez stated to her, "I know you have a medical issue." (Pl. Aff. ¶ 1.) However, "[m]ere knowledge of an employee's impairment is not enough, because anyone could prove a prima facie case of employment discrimination merely by showing adverse action against the individual and that the employer was aware of the employee's disability." *Davis v. Davis Auto, Inc.*, No. 10-3105, 2011 WL 5902220, at *8 (E.D. Pa. Nov. 22, 2011), *aff'd*, 509 F. App'x. 161 (3d Cir. 2013); *see also Gutknecht v. SmithKline Beecham Clinical Labs., Inc.*, 950 F. Supp. 667, 671 (E.D. Pa. 1996), *aff'd*, 135 F.3d 764 (3d Cir. 1997) ("Mere knowledge of an employee's age does not constitute discriminatory animus.").[10]

In addition, Plaintiff alleges that former Service Manager Alvaro Ortero made harassing remarks about her medical condition. (Am. Compl. ¶¶ 21-22; *see also* Pl.'s Resp. Exs. E & F.) On July 25, 2013, Plaintiff filed an internal complaint with Defendant's Human Resources

---

[10] Plaintiff argues that because Enriquez—whose comment allegedly evinces discriminatory animus—supplied information to McKinney, Defendant should be liable under the cat's paw theory. (Pl.'s Resp. 13.) The cat's paw theory applies when a member of a protected class is subjected to an adverse employment action by a decision maker who is free of discriminatory animus, yet whose actions are influenced by other employees who *are* motivated by discriminatory animus. *Burlington v. News Corp.*, 55 F. Supp. 3d 723, 731 (E.D. Pa. 2014) (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 415-16 (2011)). The only evidence that Defendant points to suggesting that Enriquez was motivated by discriminatory animus was her comment expressing knowledge that Plaintiff had a medical issue. This alone is not enough to demonstrate discrimination. Furthermore, Plaintiff has not provided any evidence to show that McKinney's conclusions were in any way influenced by Enriquez.

17

Department concerning Ortero's remarks. (Am. Compl. ¶ 21.) On August 16, 2013, Plaintiff once again informed Defendant that she was subject to more harassment from Ortero. (*Id.* at ¶ 22.) Ortero resigned in December 2013. (*Id.* at ¶ 23.)

Plaintiff provides no evidence to suggest that Ortero was either a decision maker or influenced Defendant's decision to terminate Plaintiff. *See Walden v. Ga.-Pac. Corp.*, 126 F.3d 506, 521 (3d Cir. 1997) (noting that it is "generally held that comments by those individuals outside of the decisionmaking chain are stray remarks, which, standing alone, are inadequate to support an inference of discrimination"); *see also Ballard v. Mercy Catholic Med. Ctr. of Se. Pa.*, No. 12-0779, 2013 WL 3305235, at *7 (E.D. Pa. June 28, 2013) (granting the defendant summary judgment for discrimination when a co-worker who had no involvement in the plaintiff's termination directed a racial epithet towards her). Moreover, Ortero's employment terminated approximately four months before Plaintiff was terminated. Ortero had no involvement in the referral investigation that resulted in Plaintiff's termination. (Pl.'s Dep. Ex. 10.)

Plaintiff has provided no evidence that her disability was a determining factor in her termination. Instead, the record is rife with evidence that Plaintiff was terminated for reasons that were wholly nondiscriminatory.[11] *See Willmore v. Am. Atelier, Inc.*, 72 F. Supp. 2d 526, 529 (E.D. Pa. 1999) (granting the defendant summary judgment for discrimination under the ADA when the evidence showed plaintiff was terminated for insubordination); *see also Monaco*

---

[11] In addition to Defendant's proffered reasons, Plaintiff offers additional nondiscriminatory reasons for which Defendant could have made its decision: Plaintiff describes herself as a poor "salesperson" (Pl. Dep. 143); she admits that on three separate occasions in 2014 she failed to follow proper procedures or policies by incurring a $500 loss exposure (*Id.* at Ex. 11); and she was coached to minimize her discussions with customers because, as she explained, "I'm a talker." (*Id.* at 152).

*v. Limestone Veterinary Hosp.*, No. 13-1184, 2016 WL 304938, at *5 (D. Del. Jan. 25, 2016) (granting the defendant summary judgment for discrimination under the ADA when the evidence showed the plaintiff failed to appear at work).

In addition to failing step one of the *McDonnell Douglas* framework, Plaintiff also has failed to overcome steps two and three. As discussed in the preceding section, Defendant has offered a legitimate, nondiscriminatory reason for Plaintiff's termination. Furthermore, the record is devoid of any evidence to infer that Plaintiff's termination was a result of her age or disability. The record here is clear. A polling was conducted by a Wells Fargo employee in California who had no knowledge of Plaintiff's age or disability. The polling substantiated findings of improper referrals. An internal investigator was randomly assigned to the case to help Defendant gain a better understanding of how referrals were being credited at the Red Lion Road bank. The assigned investigator, McKinney, and the area district manager, Enriquez, interviewed both tellers and bankers at the bank branch. McKinney took both handwritten and typed notes at those meetings. Based upon information from a variety of sources, Defendant concluded that Plaintiff had violated its express policies by submitting at least five invalid referrals. The number of violations exceeded the amount confirmed for any other branch employee. As a result, Plaintiff's employment was terminated. Those tellers with one infraction were placed on performance improvement plans. To conclude that Defendant's reasons were pretext for discrimination would require us to believe that the disparate departments involved in this investigation, from California to Philadelphia—in a company with hundreds of thousands of employees—conspired against this individual plaintiff, under the guise of an investigation of teller referral practices at the Red Lion Road bank, to terminate Plaintiff's employment because of her age and/or disability. The record simply does not support such a conclusion.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted.

An appropriate Order will follow.

                                                 **BY THE COURT:**

                                                 **R. BARCLAY SURRICK, J.**